UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BARRY ROBINSON,

                           Petitioner,

          *- against -*

PATRICK GRIFFIN,

                        Respondent.

11 Civ. 1115(VB)(PED)

<u>REPORT AND
RECOMMENDATION</u>

TO:    THE HONORABLE VINCENT L. BRICCETTI
        UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

Proceeding *pro se*, Barry Robinson ("Petitioner") seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 challenging his January 28, 2009 conviction in Dutchess County of several narcotics offenses (Hayes, J.).  This petition comes before me pursuant to an Order of Reference dated June 13, 2011.  (Dkt. 11.)   For the reasons set forth below, I respectfully recommend that this petition be **DENIED**.

## II.  BACKGROUND[1]

### A.    <u>The Crimes and Indictment</u>

On January 15, 24, 25, 30, and 31, 2008, Shamal Whitted ("Whitted"), a paid confidential informant working with police officers from the City of Poughkeepsie Police Department, made controlled buys of crack cocaine from Petitioner.  Law enforcement surveillance teams visually observed Whitted and listened to conversations transmitted through a wire that he wore.  Two of the buys occurred at the Poughkeepsie Middle School.  On February

---

[1] Unless otherwise indicated, the information within this section is taken from a review of Respondent's Affidavit in Answer to a Petition for a Writ of Habeas Corpus ("Resp't's Aff.") (Dkt. 9) and Respondent's Memorandum of Law ("Resp't's Mem.") (Dkt. 16).

8, 2008, police executed a search warrant of Petitioner's residence and recovered narcotics and

drug paraphernalia.

Petitioner was indicted on the following offenses:

(1)     2 counts of criminal sale of a controlled substance in or near school grounds, in violation of N.Y. Penal Law § 220.44(2) (counts 1 and 6 of the indictment);[2]

(2)     5 counts of criminal sale of a controlled substance in the third degree, in violation of N.Y. Penal Law § 220.39(1) (counts 2, 4, 7, 9, and 11 of the indictment);[3]

(3)     6 counts of criminal possession of a controlled substance in the third degree, in violation of N.Y. Penal Law § 220.16(1) (counts 3, 5, 8, 10, 12, and 13 of the indictment);[4]

(4)     1 count of criminal possession of a controlled substance in the fourth degree, in violation of N.Y. Penal Law § 220.09(1) (count 14 of the indictment);[5] and

(5)     1 count of unlawful possession of marijuana, in violation of N.Y. Penal Law § 221.05 (count 15 of the indictment).[6]

---

[2] "A person is guilty of criminal sale of a controlled substance in or near school grounds when he knowingly and unlawfully sells . . . a controlled substance in violation of any one of subdivisions one through eight of section 220.39 of this article, when such sale takes place upon school grounds . . . ."  N.Y. Penal Law § 220.44(2).

[3] "A person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells . . . a narcotic drug . . . ."  N.Y. Penal Law § 220.39(1).

[4] "A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it . . . ."  N.Y. Penal Law § 220.16(1).

[5]

A person is guilty of criminal possession of a controlled substance in the fourth degree when he knowingly and unlawfully possesses . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-eighth ounce or more . . . .

N.Y. Penal Law § 220.09(1).

[6] "A person is guilty of unlawful possession of marihuana when he knowingly and unlawfully possesses marihuana."  N.Y. Penal Law § 221.05.

(Indictment (attached to Resp't's Mem., at Ex. 2).[7]

**B.**     **The Pretrial Proceedings**

Through counsel, Petitioner filed a pretrial omnibus motion which sought, among other things, to suppress statements Petitioner made to police and to suppress identification evidence by Whitted.  The court conducted pretrial suppression hearings and, by order dated October 31, 2008, denied the request to suppress the identification evidence, but granted the request to suppress the statements.

**C.**     **The Trial, Verdict, and Sentence**

A jury trial began on December 4, 2008.  Petitioner did not testify.  The court submitted 10 out of the 15 counts in the indictment to the jury: two counts of criminal sale of a controlled substance in or near school grounds; five counts of criminal sale of a controlled substance in the third degree; one count of criminal possession of a controlled substance in the third degree; one count of criminal possession of a controlled substance in the fourth degree; and one count of unlawful possession of marihuana.  The jury found Petitioner guilty of each charge.  Petitioner was sentenced on January 28, 2009, as a second felony offender, to determinate, concurrent terms of nine years imprisonment, plus five years post-release supervision, on each of the felony convictions, as well as time served on the marihuana conviction.[8]  The court also ordered Petitioner pay a $1,000 fine.

---

[7] Unless otherwise indicated, all exhibits cited herein are attached to Respondent's Affidavit (Dkt. 9).

[8] Petitioner was convicted of, among other things, criminal possession of a weapon in the third degree on March 20, 1998.  (Sentencing T: 2 (Dkt. 10)); N.Y. Penal Law § 265.02(4), repealed by 2006 N.Y. Sess. Law ch. 742, § 1 (2006).

3

**D.**     **The Direct Appeal**

Through appellate counsel, Petitioner raised the following claims on direct appeal:

(1)     the court abused its discretion by sentencing Petitioner to pay a fine;

(2)     the convictions were against the weight of the evidence;

(3)     one of the instructions given to the jury improperly shifted the burden of proof;

(4)     it was improper for the police to have paid the confidential informant; and

(5)     the sentence was excessive.

(Appellant Robinson's Main Appeal Br. ("Appellant's Br.") (attached to Resp't's Mem., at Ex. 6).)

By decision and order dated June 15, 2010, the Second Department modified Petitioner's judgment of conviction by reducing the period of post-release supervision imposed from five years to three years.  It then affirmed the judgment as modified.  People v. Robinson, 902 N.Y.S.2d 394 (App. Div. 2010).  Petitioner sought leave to appeal from the New York State Court of Appeals, and leave was denied on August 16, 2010.  People v. Robinson, 15 N.Y.3d 809 (2010).

Petitioner did not seek a writ of *certiorari* to the United States Supreme Court, nor has he filed any post-conviction applications seeking state collateral review.  (See Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet.") ¶¶ 10(g), 11 (Dkt. 1).)

**E.**     **The Federal *Habeas Corpus* Proceeding**

By petition dated February 6, 2011, Petitioner seeks a federal writ of *habeas corpus*.[9]  He raises the following claims:

(1)     the court erred by imposing the fine;

(2)     the evidence was legally insufficient and the conviction was against the weight of evidence;

_____

[9] The petition was timely filed.  See 28 U.S.C. § 2244(d).

4

(3)     a jury instruction improperly shifted the burden of proof to the defense;
(4)     prosecutorial misconduct during summation; and
(5)     ineffective assistance of trial counsel for failing to preserve issues for direct appeal.

(Pet. ¶ 14.)  Respondent opposes the petition.  (Dkt. 16.)  Petitioner has filed a reply.  (Dkt. 17.)

## III. DISCUSSION

### A.     Applicable Law on *Habeas Corpus* Review

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may

review the merits of a state criminal judgment in a *habeas corpus* action, the court must first

determine whether the petitioner has complied with the procedural requirements set forth in 28

U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

accordance with § 2254(d).  The procedural and substantive standards applicable to *habeas*

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized

below.

### 1.     *Timeliness Requirement*

A federal *habeas* petition is subject to AEDPA's strict, one-year statute of limitations.

See 28 U.S.C. § 2244(d).  The statute provides four different potential starting points for the

limitations period, and specifies that the latest of these shall apply.  See id. § 2244(d)(1).  Under

the statute, the limitation period is tolled only during the pendency of a properly filed application

for State post-conviction relief, or other collateral review, with respect to the judgment to be

challenged by the petition.  See id. § 2244(d)(2).  The statute reads as follows:

5

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011).  "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances.  He must further demonstrate that those circumstances caused him to miss the original filing deadline." Id.  Finally, "[c]onsistent with the maxim that equity aids the vigilant, a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that he acted with reasonable diligence throughout the period he seeks to toll." Id. at 138 (internal quotation marks and citations omitted); see also Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (the applicant for equitable tolling must

6

"demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances").

### 2.   *Exhaustion Requirement*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented").  The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claim.  Rose v. Lundy, 455 U.S. 509, 518–19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).  "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims."

7

Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)).  Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition."

Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted).  A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982).  A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."  Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted).  "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)."  Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).  Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. See, e.g., Reyes, 118 F.3d at 139.  However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise

8

its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also, e.g., Padilla v. Keane, 331 F. Supp. 2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3. *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423–24 (1991)). The determination of whether a state procedural rule is "firmly established and regularly followed" requires inquiry into "the specific circumstances presented in the case." Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citing Lee v. Kemma, 534 U.S. 362, 386–87 (2002)). The Second Circuit has identified three "guideposts" for making this determination:

(1) whether the alleged procedural violation was actually relied on in the trial court,

9

and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether the state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, legitimate government interest.

Id. (citing Lee, 534 U.S. at 381–85).

### 4.   *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims.  § 2254(d)(1)–(2).  This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review.  Williams v. Taylor, 529 U.S. 362, 402 (2000).  For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)–(2).  The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).  Where the state court "did not reach the merits" of the federal claim, however, "federal habeas review is not subject to the deferential standard that applies under AEDPA . . . .  Instead, the claim is reviewed *de novo*." Cone v. Bell, 556 U.S. 449, 472 (2009); see § 2254(d).

Under the first prong of the AEDPA deferential standard, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

> Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court. . . . If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the federal claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement.

Harrington v. Richter, 131 S. Ct. 770, 786–87 (2011) (internal quotation marks and citations omitted).

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997) (citing Green v. Scully, 850 F.2d 894, 900 (2d Cir. 1988) ("'[t]he factual findings of the New York Courts are

presumed to be correct'").  The petitioner must rebut this presumption by "clear and convincing evidence."  § 2254(e)(1).

**B.**  <u>**Application**</u>

**1.**  <u>***Claim One is Procedurally Barred from Federal* Habeas *Review***</u>[10]

Petitioner argues in Claim One that the court erred when it imposed a $1,000 fine. Specifically, he maintains that the amount of the fine is excessive and the court erred by failing to consider his ability to pay before imposing the fine.  (Pet. ¶ 14; Pet'r's Br., at 12–13 (Dkt. 2); Appellant's Br., at 46; Reply to Return ("Pet'r's Reply") ¶ (Dkt. 17).)  Respondent contends, in part, that this claim remains procedurally barred from *habeas* review.  (Resp't's Mem., at 35–40.)  Respondent is correct.

The Second Department's written decision on Petitioner's direct appeal represents the last-reasoned state court decision to address Claim One.  <u>See</u> <u>Ylst,</u> 501 U.S. at 803.  It is clear that the court denied the claim as "unpreserved for appellate review and, in any event, . . . without merit."  <u>Robinson,</u> 902 N.Y.S.2d at 395.  It is also clear that this decision references New York State's contemporaneous objection rule and trial counsel's failure to lodge an objection to the fine at the time it was imposed.  <u>See id.</u>  The contemporaneous objection rule provides:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

N.Y. Crim. Proc. Law § 470.05(2).  Accordingly, the rule requires that "an objection to a ruling

---

[10] I identify the claims as I have numbered them in Section II(E) above.

12

or instruction of a criminal court . . . be raised contemporaneously with the challenged ruling or instruction in order to preserve the objection for appellate review." Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (citing People v. Jones, 440 N.Y.S.2d 248, 254 (App. Div. 1981)).

While the Second Department went on to alternatively dismiss the claim on the merits, see Robinson, 902 N.Y.S.2d at 395, it is well-established that its reliance on this state procedural rule constitutes an independent and adequate ground for its decision denying the claim, and therefore precludes this Court from considering the claim upon *habeas* review, see Harris, 489 U.S. at 264 n.10 (state court decision that relies on a procedural rule to dismiss a claim, but which, in the alternative, also proceeds to dismiss the claim on the merits, relies on the independent state law ground for dismissal); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 n.4 (2d Cir. 2000) (noting that when a state court opines that a claim is "not preserved for appellate review" and then rules "in any event" that the claim also fails on its merits, the claim rests on the independent state law rule which precludes federal *habeas* review); see also Wainwright v. Sykes, 433 U.S. 72, 86 (1977) (contemporaneous objection rule constitutes adequate procedural ground for dismissal); Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (same); see also, e.g., Williams v. Ercole, No. 09 Civ. 363(SJF), 2011 WL 4944268, at *6 (E.D.N.Y. Oct. 12, 2011) (Appellate Division's invocation of N.Y. Crim. Proc. Law § 470.05(2) constitutes independent and adequate state procedural ground that precludes federal *habeas* review); Martin v. Brown, No. 08 Civ. 316(JFB), 2010 WL 1740432, at *7 (E.D.N.Y. Apr. 29, 2010) (same).[11]

Petitioner asserts ineffective assistance of trial counsel as cause for this procedural

---

[11] Copies of unreported cases cited herein will be mailed to Petitioner as a *pro se* litigant. See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009) (per curiam).

default.  (See Pet. ¶ 14; Pet'r's Br., at 3–5; App. Br., at 56 (Ex. 6).)  Specifically, Petitioner

argues that trial counsel was deficient for failing to object to the fine and preserve the claim for

appeal.  Cause may be demonstrated by showing "that some objective failure external to the

defense impeded counsel's efforts to comply with the State's procedural rule."  Murray v.

Carrier, 477 U.S. 478, 488 (1986).  The failure "must be something *external* to the petitioner,

something that cannot fairly be attributed to him."  Coleman, 501 U.S. at 753 (emphasis in

original).  Attorney error may establish cause if it constitutes ineffective assistance of counsel.

Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001).  However, as discussed below, Petitioner

cannot establish that trial counsel was ineffective (Claim Five).  Accordingly, because Petitioner

cannot establish cause to circumvent the procedural default applicable to Claim One, the claim

must be denied as procedurally barred.[12]

---

[12] In any event, to the extent that Petitioner argues in Claim One that the fine constituted
an excessive sentence, it is well-settled that "[n]o federal constitutional issue is presented where .
. . the sentence is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381,
1383 (2d Cir. 1992) (per curiam).  Here, Petitioner's convictions of criminal sale of a controlled
substance in or near school grounds, a class B felony, entitled Petitioner to a sentence of a fine,
"not exceeding the higher of . . . five thousand dollars; or . . . double the amount of [his] gain
from the commission of the crime; or . . . thirty thousand dollars."  N.Y. Penal Law §
80.00(1)(a),(b)(c)(iii).  Petitioner's $1,000 fine fell within the statutory parameter.  Accordingly,
even if it were not procedurally barred, this argument must be denied as not cognizable upon
federal *habeas* review.
    Additionally, because Claim One is procedurally defaulted, I do not reach the issue of
whether a fine-related claim is itself cognizable upon federal *habeas* review.  See 28 U.S.C. §
2254(a) (emphasis added) (writ of federal *habeas corpus* available "only on the ground that [a
person] is *in custody* in violation of the Constitution or laws or treaties of the United States");
United States v. Boyd, 407 F. App'x 559, 560 (2d Cir. 2011) (quoting Kaminski v. United
States, 339 F.3d 84, 87–88 (2d Cir. 2003)) ("[r]estitution orders cannot be challenged through a
habeas petition because a 'monetary fine is not a sufficient restraint on liberty to meet the in
custody requirement"; Davis v. Franco, No. CV 12–2852(DSF)(JC), 2013 WL 812715, at *2 n.4
(C.D. Cal. Feb. 1, 2013) (Report & Recommendation), adopted by 2013 WL 812714 (C.D. Cal.
Mar. 4, 2013) (emphasis in original) (restitution-related claims "are not cognizable on federal
habeas review because they do not constitute challenges to petitioner being *in custody* in
violation of the . . . Constitution or laws or treaties of the United States"); id. (collecting cases).

2.     ***Claim Two is Not Cognizable and/or Procedurally Barred From Federal Habeas Review***

Petitioner raises arguments concerning the weight and legal sufficiency of evidence in Claim Two.[13]  (Pet. ¶ 14; Pet'r's Br., at 14–16; Appellant's Br., at 47–51.)  Respondent contends, in part, that this claim is not cognizable upon federal *habeas* review.  (Resp't's Mem., at 40–49.)  Respondent is correct.

It is well-established that a weight of the evidence claim is exclusively a matter of state law and consequently does not present a federal question necessary for federal *habeas* review.  See, e.g., McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus"); Garrett v. Perlman, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (a weight of the evidence claim is a state law claim arising under N.Y. Crim. Proc. Law § 470.15 and therefore does not present a federal question); Douglas v. Portuondo, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002) (a weight of the evidence claim is "an error of state law, for which habeas review is not available"); see also Estelle v. McGuire, 502

---

[13] Specifically, he states:

> Proof of the seller's identity was against the weight of the evidence.  The six sales conviction counts had no proof of corroboration of identity of the seller and the confidential informant admitted being an accomplice who was acting as agent for another person and was given a volume discount for acting as agent to a third party buyer.  Additionally, it was against the weight of the evidence to find petitioner guilty on 2/8/09 because the drugs was [*sic*] not found in pain view or on anyone [*sic*] possession.  The drug's [*sic*] was [*sic*] hidden in the insulation in the attic, and the drug's [*sic*] in the basement was [*sic*] never connected to anyone because they were found inside of a leather jacket.  Beside petitioner, there were other individuals in the house and it was never established by the People who the house belong [*sic*] to.

(Pet. ¶ 14.)

U.S. 62, 67–68 (1991) ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  Accordingly, Claim Two must be denied.

   To the extent that Petitioner contends that the evidence was legally insufficient to support his conviction, Respondent argues that the claim must be denied as procedurally barred from federal *habeas* review.  (Resp't's Mem., at 40–49.)  Respondent is correct.

   The Second Department's written decision on Petitioner's direct appeal represents the last-reasoned state court decision to address this claim.  See Ylst, 501 U.S. at 803.  It is clear that the court relied upon the contemporaneous objection rule when it denied the claim as unpreserved for appellate review.  Specifically, it held:

> The defendant's contention that the evidence was legally insufficient to support his convictions is unpreserved for appellate review (see CPL 470.05(2)); People v. Hawkins, 11 N.Y.3d 484 [2008]. In any event, viewing the evidence in the light most favorable to the prosecution (see People v. Contes, 60 N.Y.2d 620 [1983]), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt.

Robinson, 902 N.Y.S.2d at 394.  As discussed above, it is well-established that the state court's reliance on this procedural rule constitutes an independent and adequate ground for its decision denying the claim, which precludes this Court from reviewing the merits of the claim upon *habeas* review.  See Harris, 489 U.S. at 264 n.10; Wainwright, 433 U.S. at 86; Fama, 235 F.3d at 810 n.4; Bossett, 41 F.3d at 829 n.2; Williams, 2011 WL 4944268, at *6; Martin, 2010 WL 1740432, at *7.

   Petitioner raises ineffective assistance of counsel claims for counsel's failure to preserve issues for direct appeal (Claim Five).  However, as discussed below, Petitioner cannot show that counsel was ineffective.  Because Petitioner cannot show that counsel was ineffective, he cannot

establish cause to circumvent the procedural default applicable to Claim Two.  Claim Two must therefore be denied as procedurally barred.

### 3.      *Claim Three*

Petitioner argues in Claim Three that *habeas* relief should be granted because one of the instructions given to the jury improperly shifted the burden of proof to the defense.  Specifically, he states: "The Court gave the wrong charge to the jury concerning the police testimony shifting the burden by using an out dated instruction from 1CJI7.08.  This section was superseded by 2 CJI at the time of petitioner [*sic*] conviction because of the wrong charge petitioner was denied a fair trial."  (Pet. ¶ 14; see Pet'r's Br., at 10–11; Appellant's Br., at 52–53.)  Respondent contends, in part, that the claim remains procedurally barred from federal *habeas* review. (Resp't's Mem., at 49–55.)  Respondent is correct.

The Second Department's written decision on Petitioner's direct appeal represents the last-reasoned state court decision to address this claim.  See Ylst, 501 U.S. at 803.  It is clear that the court denied the claim as "unpreserved for appellate review and, in any event, . . . without merit."  Robinson, 902 N.Y.S.2d at 395.  As discussed above, the state court's reliance on New York State's contemporaneous objection rule represents and independent and adequate state procedural bar that precludes federal *habeas* review of the claim.  See Harris, 489 U.S. at 264 n.10; Wainwright, 433 U.S. at 86; Fama, 235 F.3d at 810 n.4; Bossett, 41 F.3d at 829 n.2; Williams, 2011 WL 4944268, at *6; Martin, 2010 WL 1740432, at *7.

Petitioner raises an ineffective assistance of counsel for failing to preserve this issue for direct appeal.  Petitioner also argues that counsel's error establishes cause for his procedural default.  However, as discussed below, Petitioner cannot establish that trial counsel was ineffective (Claim Five).  Accordingly, because Petitioner cannot establish cause to circumvent

the procedural default applicable to Claim Three, the claim must be denied as procedurally barred.

### 4.     *Claim Four*

Petitioner argues in Claim Four that he was denied his right to a fair trial due to prosecutorial misconduct during the summation.  Specifically, Petitioner maintains that "[t]he prosecutor gave an improper vouching summation to the jury asking why would the confidential informant lie for a couple of hundred dollar [*sic*] was clearly prejudicial denying petitioner a fair trial."  (Pet. ¶ 14; <u>see</u> Pet'r's Br., at 7–9; Appellant's Br., at 55–56.)  Respondent contends, in part, that the claim remains procedurally barred from federal *habeas* review.  (Resp't's Mem., at 55–59.)  Respondent is correct.

The Second Department's written decision on Petitioner's direct appeal represents the last-reasoned state court decision to address this claim.  <u>See</u> <u>Ylst</u>, 501 U.S. at 803.  It is clear that the court denied this claim as "unpreserved for appellate review and, in any event, . . . without merit."  <u>Robinson</u>, 902 N.Y.S.2d at 395.  As discussed above, the state court's reliance on New York's contemporaneous objection rule represents and independent and adequate state procedural bar that precludes federal *habeas* review of the claim.  <u>See</u> <u>Harris</u>, 489 U.S. at 264 n.10; <u>Wainwright</u>, 433 U.S. at 86; <u>Fama</u>, 235 F.3d at 810 n.4; <u>Bossett</u>, 41 F.3d at 829 n.2; <u>Williams</u>, 2011 WL 4944268, at *6; <u>Martin</u>, 2010 WL 1740432, at *7.

Petitioner raises a claim of ineffective assistance of trial counsel for counsel's failure to preserve this issue for direct appeal.  He also maintains that cause is established for this procedural default due to counsel's error.  However, as discussed below, Petitioner's ineffective assistance of trial counsel claim must be denied (Claim Five).  Accordingly, because Petitioner cannot establish cause to circumvent the procedural default applicable to Claim Four, the claim

must be denied as procedurally barred.

**5.** ***Claim Five***

Petitioner argues in Claim Five that trial counsel rendered ineffective assistance for failing to "make the appropriate objections to properly preserve the issues for appellate review." (Pet. ¶ 14; <u>see</u> Pet'r's Br., at 3–7; Appellant's Br., at 55–56; <u>see generally</u> Pet'r's Reply.) Respondent contends, in part, that the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  (Resp't's Mem., at 59–64.) Respondent is correct.[14]

The Second Department's written decision on Petitioner's direct appeal represents the last-reasoned state court decision to address this claim.  <u>See Ylst</u>, 501 U.S. at 803.  It is clear that the court denied the claim on the merits.  <u>Robinson</u>, 902 N.Y.S.2d at 394.  Accordingly, I address Claim Five pursuant to AEDPA's deferential standard of review.

The Counsel Clause of the Sixth Amendment of the United States Constitution provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. Amend. VI.  The Supreme Court has construed this clause to afford criminal defendants the right to the *effective* assistance of counsel.  <u>See McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970).  A *habeas* petitioner's ineffective assistance of counsel claim will succeed on the merits if the petitioner proves (1) that counsel's representations "fell below

---

[14] Respondent also argues that the federal nature of Petitioner's ineffective assistance of counsel claim was not fairly presented to the state courts on direct appeal because Petitioner cited only one New York State case in his appellate brief in support of this claim.  (Resp't's Mem., at 59–60.)  Petitioner disputes this and points out that his appellate brief also referenced the Sixth Amendment of the United States Constitution in support of this claim.  (<u>See</u> Pet'r's Reply, at 2.)  Petitioner is correct.  (<u>See</u> Appellant's Br., at 55–56.)  The federal nature of this claim was therefore fairly presented to the state courts on direct appeal.  <u>Daye</u>, F.2d at 194.

an objective standard of reasonableness," as measured under "prevailing professional norms," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

*Habeas* petitioners bear the burden of proving both prongs of the Strickland test. He or she must therefore prove that his or her attorney's actions were objectively unreasonable as well as that he or she was prejudiced to the extent that there exists a reasonable probability that the result of the proceeding would have been different. Id. at 689, 693. To show that an attorney's conduct was unreasonable, the petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Additionally, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. Because a petitioner may succeed only by proving both Strickland prongs, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

As described below, Petitioner cannot meet his heavy *habeas* burden and show that trial counsel was ineffective for failing to raise any of the arguments presented in Claims One, Two, Three, or Four above.

### i.   <u>Counsel was Not Ineffective for Failing to Preserve Claim 1</u>

Petitioner contends that counsel was ineffective for failing to argue that the court erred by imposing a $1,000 fine. However, Petitioner cannot meet his *habeas* burden and establish both prongs of Strickland. First, to the extent Petitioner contends that the court erred by

imposing an excessive sentence, he fails to meet <u>Strickland</u>'s second prong and show that the result of the proceeding would have been different had counsel preserved this issue. As discussed above, the $1,000 fine was within the range permitted by New York law. N.Y. Penal Law § 80.00(1)(a),(b)(c)(iii); (<u>see</u> <u>supra</u> n.12.)

Second, to the extent Petitioner contends that the court erred by failing to conduct a hearing or otherwise by failing to consider his ability to pay the fine, Petitioner fails to meet <u>Strickland</u>'s first prong and show that counsel failure to make this argument constituted deficient conduct. It is well-settled that an attorney is given wide latitude in making strategic and tactical trial decisions. <u>See</u> <u>Strickland</u>, 466 U.S. at 689 (decisions that "might be considered sound trial strategy" do not reflect ineffective assistance of counsel); <u>see also, e.g.</u>, <u>United States v. Eisen</u>, 974 F.2d 246, 265 (2d Cir. 1992) (quoting <u>United States v. Nersesian</u>, 824 F.2d 1294, 1321 (2d Cir. 1987)) (counsel's "decisions that 'fall squarely within the ambit of trial strategy . . . , if reasonably made,' cannot support an ineffective assistance claim"); <u>United States v. Helgesen</u>, 669 F.2d 69, 72 (2d Cir. 1982) (citing <u>United States v. Aulet</u>, 618 F.2d 182, 189 (2d Cir. 1980)) (explaining the "reluctance to second-guess matters of trial strategy simply because the chosen strategy has failed"); <u>Singleton v. Duncan</u>, No. 03 Civ. 561(ARR), 2006 WL 73734, at *14 (E.D.N.Y. Jan. 10, 2006) (citing <u>Jones v. Barnes</u>, 463 U.S. 745, 752 (1983), <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994), and <u>Aparicio</u>, 269 F.3d at 95, and determining that "a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy").

Here, the record reflects that counsel focused his argument at sentencing on Petitioner's term of imprisonment. The prosecution had requested that the court sentence Petitioner to a term of fourteen years. It argued that the long sentence was warranted, in part, because two of the

drug sales occurred near the Poughkeepsie Middle School.  Defense counsel effectively countered this argument by pointing out that the sales occurred at night, on a sidewalk, and at times when after-school events were not being held.  (Sentencing T: 12–14.)  The court agreed with defense counsel and found that the sales "had nothing to do with children or anybody connected with the school," and that the fact that two of the sales occurred near the school was simply "a geographical coincidence because Mr. Robinson lives across the street from the school."  (Sentencing T: 17.)  Petitioner was then sentenced to a term of nine years imprisonment–*i.e.*, five years less than the term sought by the prosecution.  The court also sentenced Petitioner to pay a $1,000 fine on the basis that he had sold the drugs for profit, and not simply for his own personal use or to support his own drug habit.  (Sentencing T: 16–18.)

Counsel's decision to concentrate his efforts on arguing for a shorter prison sentence cannot be said to have been an unreasonable strategy.[15]  Accordingly, because Petitioner cannot establish both prongs of Strickland, the state court's denial of this component of Claim Five was neither contrary to, nor an unreasonable application of, clearly established federal law.[16]  Further, because Petitioner cannot establish that counsel was ineffective, he does not have cause to circumvent the procedural bar applicable to Claim One.

---

[15] Moreover, I note that, under New York law, Petitioner may have an additional state remedy available in which to contest the amount of his fine.  See N.Y. Crim. Proc. Law § 420.10(5) ("In any case where the defendant is unable to pay a fine . . . . he may at any time apply to the court for resentence.").  Given this additional avenue for relief, counsel's decision to focus his argument at sentencing on the term of imprisonment only was certainly a reasonable strategy.

[16] Because Petitioner cannot establish that counsel was deficient, I do not reach the issue of whether an ineffective assistance of counsel claim premised on the imposition of a fine is cognizable upon federal *habeas* review.  (See supra n. 12); see also Davis, 2013 WL 812715, at *2 n.4 ("restitution-related claims (including . . . ineffective assistance of counsel claims . . . predicated on restitution-related errors) . . . are not cognizable on federal *habeas* review").

### ii.      Counsel was Not Ineffective for Failing to Preserve Claim 2

Petitioner claims that counsel was ineffective for failing to argue that the verdict was against the weight of the evidence and that the evidence was legally insufficient to support his conviction.  Petitioner's arguments fail under Strickland.

First, Petitioner contends there was insufficient proof of the identity of the individual who sold Whitted the narcotics.  Specifically, Petitioner maintains that Whitted was an accomplice and that the prosecution, as required under New York law, failed to corroborate his testimony at trial in order to establish that Petitioner was the individual who sold Whitted the drugs.  (See Pet'r's Br., at 14–16; Appellant's Br., at 47–49.)  Petitioner is incorrect.  New York law requires that, where a conviction is based upon the testimony of an accomplice, that testimony must be corroborated with other evidence connecting the defendant with the crime. N.Y. Crim. Proc. Law § 60.22(1).  An "accomplice" is statutorily defined "a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in . . . [t]he offense charged[,] or . . . [a]n offense based upon the same or some of the same facts or conduct which constitute the offense charged."  Id. § 60.22(2).

In this case, Whitted was not an accomplice.  There was no evidence at trial to suggest that he intended to use or to sell the drugs that he purchased from Petitioner on the dates described above.  Instead, the evidence at trial clearly established that Whitted worked as an agent of law enforcement on those dates.  Both Whitted and police officers testified that Whitted approached the police and sought paid work as a confidential informant.  Police agreed and paid Whitted $40 for his time for each of the controlled buys on January 15, 24, 25, 30, and 31, 2008. Whitted was also paid a total of $300 for his time spent at the Grand Jury, $260 for time spent meeting with the District Attorney's Office, and additional money for time spent at trial.  (T:

23

100–05, 145–46, 157–60, 263 (Dkt. 10).)  Testimony also established that Whitted was searched by officers for narcotics and cash prior to making the controlled buys on January 15, 24, 25, 30, and 31, 2008; that he was given cash by the officers before he left them to buy the drugs; that he was searched again when he returned to police after purchasing the narcotics; and that all narcotics found on his person after his rendevous with the seller were confiscated by police.  (T: 33–36, 45, 56, 59–60, 65, 68, 72–73, 78, 86–87, 94, 197–98, 203, 206–08.)  "[A]s a matter of law," "[a]n informant acting as an agent of the police without the intent to commit a crime is not an accomplice whose testimony requires corroboration."  People v. Brown, 770 N.Y.S.2d 243, 244 (App. Div. 2003); see also, e.g., People v. Tillman, 737 N.Y.S.2d 179, 181 (App. Div. 2001) (quoting People v. Cleveland, 709 N.Y.S.2d 751, 752 (App. Div. 2000)) ("We reject defendant's contention that the buyer was an accomplice whose testimony requires corroboration.  The buyer was acting as 'an agent of police without the intent to commit a crime,' and thus corroboration of her testimony was not required[.]"); Cleveland, 709 N.Y.S.2d at 752 (collecting cases).

In any event, and contrary to Petitioner's contention, Whitted's testimony that Petitioner was the individual who sold him the narcotics was corroborated by other evidence at trial.  For instance, the baggies that contained the crack cocaine that Petitioner sold to Whitted were introduced into evidence.  (T: 50, 60–61, 69–70, 78–80, 94–96.)  Whitted and police testified that Whitted used a cell phone to call the seller and to schedule the narcotics transaction.  Police testified to their observations of Whitted's side of the conversation.  Evidence was introduced to show that the phone number Whitted called belonged to an individual with the same name as Petitioner.  (T: 35–36, 199–200, 558.)  Whitted also wore a body wire when he met Petitioner, and officers conducted visual surveillance of the operations.  The officers testified about their observations as to what they saw and heard on January 15, 24, 25, 30, and 31, 2008, and the

24

audio recordings were introduced into evidence.  (T: 33–45, 51–53, 55–60, 62–78, 81–82, 85–95, 98–100, 200, 415–19, 446–58, 490–501, 531–38.)  This evidence was sufficient to corroborate Whitted's testimony and establish that Petitioner was the individual who sold Whitted the narcotics.  Accordingly, counsel's failure to raise a meritless argument to the contrary cannot be considered deficient conduct and could not have affected the outcome of the proceedings.  See, e.g., United States v. Regalado, 518 F.3d 143, 149 n.3 (2d Cir. 2008) (per curiam) (internal quotation marks and citation omitted) ("failure to make a meritless argument does not amount to ineffective assistance"); United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005) (citing Cuevas v. Henderson, 801 F.2d 586, 592 (2d Cir. 1986) and United States v. Eltayib, 88 F.3d 157, 170 (2d Cir. 1996)) (failure to raise futile objection does not constitute ineffective assistance under Strickland); Stewart v. Greene, No. 05 Civ. 566(WHP)(THK), 2009 WL 4030833, at *21 (S.D.N.Y. Nov. 19, 2009) ("because these claims lack merit . . . , Petitioner cannot establish prejudice resulting from their omission").

Next, Petitioner contends that there was insufficient evidence to show that the narcotics recovered that were recovered after the search of the house belonged to Petitioner.  (Pet'r's Br., at 15 n.2; Appellant's Br., at 49–51.)  Petitioner is incorrect.  "[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  Jackson v. Virginia, 443 U.S. 307, 315 (1979) (internal quotation omitted).  Accordingly, a claim of legally insufficient evidence will not succeed where, "after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  A petitioner "bears a very heavy burden" to show that no rational jury could have found the substantive elements of

the offense beyond a reasonable doubt and succeed on such a claim.  <u>Fama</u>, 235 F.3d at 811

(internal quotation omitted).  In addition, "when it considers the sufficiency of the evidence of a

state conviction, a federal court must look to state law to determine the elements of the crime."

<u>Id.</u>

Petitioner has failed to establish that no reasonable jury could have determined that he

was the individual who sold the narcotics to Whitted, or that he lived in the house where the

narcotics were found.  In addition to Whitted's testimony and the other evidence described

above, police officers testified at trial that the residence they searched was a single family home

that contained four bedrooms.  Petitioner, two adult women, and four children were present

when the warrant was executed on February 8, 2008 at or about 11:10 p.m.  Among other things,

police recovered the cell phone whose number matched the number that Whitted called before he

met with the dealer for the controlled buys, and whose number was registered to a person with

Petitioner's name.  Police recovered currency as well as mail addressed to Petitioner at that

address from underneath a mattress in the master bedroom.[17]  They also recovered crack cocaine,

marijuana, and zip-lock baggies from a crawl space in the attic, a scale used for weighing

narcotics from a closet in the attic, and a bowl containing a razor and crack cocaine residue, as

well as an adult-sized jacket with crack cocaine in its pocket, from a closet in the basement.

Police testified that the estimated street value of the crack cocaine recovered from the residence

was approximately $840.  (T: 110–11, 113–18, 124–45, 178, 459–61, 558, 624.)

Although Petitioner's aunt testified that in January and February of 2008, Petitioner lived

with her in a one-bedroom apartment at another location, (T: 653–54), the jury was free to find

---

[17] The serial numbers on the currency recovered did not match those on the currency that
police gave to Whitted prior to the controlled buys.  (T: 117.)

this witness incredible in light of the other evidence introduced that established Petitioner's residence and control over the narcotics seized at the house searched by police.  See United States v. Kinney, 211 F.3d 13, 18 (2d Cir. 2000) (quoting United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998)) ("In analyzing a sufficiency of the evidence claim, '[w]e defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of competing inferences that can be drawn from the evidence.'").

In light of the evidence presented, there is no reasonable probability that, had counsel raised an objection to the sufficiency of the evidence, the result of the proceeding would have been different.  Moreover, counsel cannot be said to have been deficient for failing to raise this futile claim.  See, e.g., Regalado, 518 F.3d at 149 n.3; Cohen, 427 F.3d at 170; Stewart, 2009 WL 4030833, at *21.  Because Petitioner cannot establish that counsel was ineffective under Strickland, the state court's denial of this component of Claim Five was neither contrary to, nor an unreasonable application of, clearly established federal law.  Further, because Petitioner cannot show that trial counsel was ineffective, he cannot establish cause to circumvent the procedural bar applicable to Claim Two.

### iii.   Counsel was Not Ineffective for Failing to Preserve Claim 3

Petitioner claims that counsel was ineffective for failing to argue that the trial court erroneously instructed the jury about the credibility of the testimony given by police officers. Specifically, the court instructed the jury that:

> You will also recall that certain police officers have testified in the case.  You should use the same tests in evaluating their testimony as you will use in evaluating the testimony of any other witness.  The mere fact that a witness is a police officer does not *require* that his testimony be given any greater or lesser credibility than any other witness.

(T: 718 (emphasis added).)  Petitioner maintains that the court erred by using the word "require,"

27

rather than "permit," because the jury was effectively instructed that "if they want[ed] to, [they

could] permissively give police officers more credence than other witnesses . . . [which]

reverse[d] the burden of proof."  (Appellant's Br., at 52–53; see Pet'r's Br., at 10–11.)

Petitioner's argument fails under Strickland.

> Under New York law,
>
> [A] charge which in effect instructs a jury that it must accept in its entirety the story
> of one or another of two sets of witnesses in a conflict is erroneous, for jurors have
> the latitude to analyze the evidence in a case, to accept part of it and to reject part of
> it, and to draw any inferences from the testimony, exhibits, and circumstances that
> they deem reasonable.
>
> A charge that a jury must find in a certain way if it should believe a certain witness,
> is ordinarily improper as preventing the jury from construing the evidence and
> determining the facts which it establishes.

Girden v. Sandals Int'l, 262 F.3d 195, 204 (2d Cir. 2001) (quoting 105 N.Y. Jur. 2d Trial § 431

(1992)).

In this case, the jury was properly instructed that they were not required to give any more

weight, or to find any more credible, the testimony of police officers than other witnesses simply

because of the officers' occupations.  (T: 718.)  The mere fact that the instruction stated that the

jury is *permitted* to do so is not erroneous under New York law.  Moreover, a review of the

entire charge shows that the jury was instructed that a witness's credibility may be assessed

using a variety of factors, including the jury's own notions of common sense and their life

experiences.  (T: 704–05, 711–12, 713, 714–15.)  The instruction regarding the police officers

correctly states that "the same tests" should be used to assess the officers' credibility as are used

to assess the credibility of civilian witnesses.  (T: 718.)  Accordingly, the instruction was proper

and did not shift the burden to the defense to prove that the officers was not credible witnesses.

C.f., e.g., People v. Pegeise, 600 N.Y.S.2d 26, 27 (App. Div. 1993) (emphasis added) ("[r]ather

than instructing the jury that a police officer's credibility should be evaluated in the same

manner as any other witness, and that the mere fact that a witness is a police officer does not

*require* that his or her testimony be given any greater or lesser credibility than that of any other

witness, the court instructed the jury that 'you are to consider the fact that a person is a police

officer in weighing that person's testimony,'" which constituted reversible error); People v.

Lopez, 593 N.Y.S.2d 871, 872 (App. Div. 1993) (court erred where it "improperly and

inexplicably refused to instruct the jury that the testimony of a police officer, in and of itself, is

entitled to no greater weight than that of an ordinary citizen"); People v. Pascullo, 502 N.Y.S.2d

275, 277 (App. Div. 1986) ("it was error not to charge the jury a police officer's testimony

should be evaluated in the same manner as the testimony of any other witness").  Because the

court's charge was proper, defense counsel's failure to make a futile objection to it did not

constitute deficient conduct.  Furthermore, no reasonable probability exists that the result of the

proceeding would have been different had counsel made such an objection.  See, e.g., Regalado,

518 F.3d at 149 n.3; Cohen, 427 F.3d at 170; Stewart, 2009 WL 4030833, at *21.

Petitioner has failed to meet his burden under Strickland for this portion of Claim Five.

As such, the state court's denial was neither contrary to, nor an unreasonable application of,

clearly established federal law.  This portion of the claim should therefore be denied.  In

addition, because Petitioner cannot show that counsel was ineffective, he cannot establish cause

in order to circumvent the procedural default applicable to Claim Four.

### iv.    Counsel was not Ineffective for Failing to Preserve Claim 4

Petitioner claims that counsel was ineffective for failing to argue that prosecutorial

misconduct during summation violated Petitioner's right to a fair trial.  Specifically, Petitioner

maintains that "[t]he prosecutor gave an improper vouching summation to the jury asking why

would the confidential informant lie for a couple of hundred dollar [*sic*] [which] was clearly

prejudicial denying petitioner a fair trial." (Pet. ¶ 14.[18])  He contends that this statement

improperly vouched for the integrity and credibility of Whitted.  (Pet'r's Br., at 7–9; Appellant's

Br., at 55–56.)   Petitioner's argument fails under Strickland.

      Under New York law, "[i]t is . . . the right of counsel during summation to comment

upon every pertinent matter of fact bearing upon the questions the jury have to decide."  People

v. Ashwal, 39 N.Y.2d 105, 109 (1976) (internal quotation marks and citations omitted).  This

right applies both to defense counsel and the prosecutor.  Id. (internal citations omitted).

Nonetheless,

> [A]lthough counsel is to be afforded the widest latitude by way of comment,
> denunciation or appeal in advocating his cause[,] summation is not an unbridled
> debate in which the restraints imposed at trial are cast aside so that counsel may
> employ all the rhetorical devices at his command.  There are certain well-defined
> limits.

Id. (internal quotation marks and citation omitted).  "[S]tatements during summation are not

improper if they constitute a 'fair comment on the evidence' at trial or a 'fair response to the

--------

[18] Specifically, the prosecutor asked the jury the following on summation:

[W]hy would [Mr. Whitted] come here and lie? . . . [W]hy would he come here for
a few hundred dollars, start this investigation, put himself at risk, sit on this witness
stand for days, be snuck in and out of my office after hours with his face hidden just
to get the defendant in trouble?  There is no evidence he has any axe to grind.  He
has known him all his life.  There is no evidence that Officer Dinonno particularly
had any person that he instructed Mr. Whitted to buy from.  If he couldn't buy from
the defendant, he could have bought from somebody else and told the police.  He
didn't get any extra points to buy from the defendant.  The officers in fact testified
they didn't know the defendant.  In fact, Officer Dinonno told you even if he was
unable to buy drugs, he still would have paid him forty dollars for his time.  So why
in the world, what motive does he have to come here and make this up?

(T: 697–98.)

remarks made by the defense counsel during summation.'" <u>Francis v. Conway</u>, No. 09 Civ. 3391(BMC), 2010 WL 23327, at *7 (E.D.N.Y. Jan. 5, 2010) (quoting <u>People v. Perez</u>, 794 N.Y.S.2d 439, 440 (App. Div. 2005)); <u>see id.</u> (citing <u>People v. Seit</u>, 86 N.Y.2d 92, 99 (1995)) ("prosecutor's comments did not warrant reversal when made in 'fair response to the defense counsel's summation'"); <u>id.</u> (citing <u>People v. Halm</u>, 81 N.Y.2d 819, 821 (1993)) ("'[T]he prosecutor's closing statement must be evaluated in light of the defense summation, which put into issue the complainants' character and credibility and justified the People's response.'")). However, where improper comments are made during a prosecutor's summation, a new trial is warranted if those comments are so egregious that they could not have had merely a harmless effect. <u>People v. Calabria</u>, 94 N.Y.2d 519, 522–23 (2000); <u>see also, e.g.</u>, <u>People v. Joseph</u>, 893 N.Y.S.2d 306, 308–09 (App. Div. 2009). Improper comments by a prosecutor include providing "his own opinion regarding the truth and falsity of witnesses' testimony and vouch[ing] for . . . credibility." <u>People v. Walters</u>, 674 N.Y.S.2d 114, 116 (App. Div. 1998).

In this case, defense counsel opened the door by attacking Whitted's credibility in his summation, and asserting that Whitted cooperated with police in order to support himself financially. Specifically, counsel stated:

> [E]verything about this case starts with Shamal Whitted, the confidential informant who testified before you Ladies and Gentlemen. He comes to you at age 29, roughly, having spent most of his life in what would be politely considered an ongoing train wreck. . . .
> He acknowledged to you that in his prior life, which only ended a few years ago, he basically sold drugs and used drugs virtually every single day. He sold crack cocaine, heroin and marijuana. He used crack cocaine and marijuana.
> He was unable ultimately to hold any form of employment, and he acknowledged to you that broke, he went to the police looking for a form of employment.
> Now, Ladies and Gentlemen, most people who are good citizens, like yourselves, adhere to the concept of see something, say something, particularly since

31

September 11, 2001, we are urged by the authorities if you see something, you say something. That is the watch word for our time.

For Mr. Whitted the watch word is say something, get paid, make a living talking to the police and working for the police.

Ladies and Gentlemen, you had an opportunity to see Mr. Whitted testify at length. You had an opportunity to evaluate his credibility in light of that. I respectfully submit to you, Ladies and Gentlemen, that Mr. Whitted, politely put, was and is a very deeply flawed individual. . . .

(T: 672–74; see also T: 685 (defense counsel arguing that the prosecution presented the jury only with "the incredible testimony of a very, very bad person, Shamal Whitted").) Because defense counsel put Whitted's character and credibility into issue, the prosecutor was permitted to fairly respond during her summation. Defense counsel's failure to make a futile objection to the prosecutor's fair comments did not, therefore, constitute deficient conduct. Furthermore, no reasonable probability exists that the result of the proceeding would have been different had counsel made such an objection. See, e.g., Regalado, 518 F.3d at 149 n.3; Cohen, 427 F.3d at 170; Stewart, 2009 WL 4030833, at *21.

Petitioner has failed to meet his burden under Strickland for this portion of Claim Five. As such, the state court's denial was neither contrary to, nor an unreasonable application of, clearly established federal law. The claim should therefore be denied. In addition, because Petitioner cannot show that counsel was ineffective, he cannot establish cause in order to circumvent the procedural default applicable to Claim Four.

## IV. CONCLUSION

For the reasons set forth above, I conclude–and respectfully recommend that Your Honor should conclude–that the petition should be **DENIED**. Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. See

32

28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Dated:   **April 24** 2014
      White Plains, New York

                                                 Respectfully Submitted,

                                                 Paul E. Davison
                                                 United States Magistrate Judge

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total

of seventeen (17) days, from service of this Report and Recommendation to serve and file

written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with

any responses to the objections, shall be filed with the Clerk of the Court with extra copies

delivered to the chambers of the Honorable Vincent L. Briccetti, at the Honorable Charles L.

Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains,

New York 10601, and to the chambers of the undersigned at the same address.  Failure to file

timely objections to this Report and Recommendation will preclude later appellate review of any

order of judgment that will be entered.  Requests for extensions of time to file objections must be

made to Judge Briccetti.

     A copy of the foregoing Report and Recommendation has been sent to the following:

Barry Robinson, *pro se*
09-A-0711
Southport Correctional Facility
236 Bob Masia Drive
P.O. Box. 236
Pine City, NY 14871

Barry Robinson, *pro se*
09-A-0711
Wallkill Correctional Facility
50 McKendrick Road
P.O. Box G
Wallkill, NY 12589-0286